NO. 07-07-0026-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 20, 2008

______________________________


MARIO ODILON REYNA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE


_________________________________

FROM THE 64TH DISTRICT COURT OF HALE COUNTY;

NO. A16870-0607; HONORABLE ROBERT W. KINKAID, JR., JUDGE

_______________________________

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Appellant, Mario Odilon Reyna, was convicted by a jury of driving while intoxicated,
third or more, and punishment was assessed at ninety years confinement. By two issues,
Appellant maintains (1) the trial court erred in denying his motion for mistrial because a
juror withheld her knowledge of Appellantâs family and her husbandâs former relationship
to Appellantâs family, and (2) the trial court erred in denying his motion to suppress. We
affirm.
Background Facts
Â Â Â Â Â Â Â Â Â Â On May 6, 2006, at approximately 9:30 p.m., Trooper Benito Gonzales was
transporting a prisoner to the Hale County Jail. He was traveling north along an âSâ curve
on FM 789 when he observed a van blocking the âYâ intersection of FM 789 and County
Road 175. The van was parked on the west side of FM 789 directly in front of the county
road. Gonzales made a U-turn to determine if the van was disabled and in need of
assistance. He pulled up behind the van and activated the âtake-downâ lights on his patrol
car to illuminate the dark area. Before he could exit the vehicle, the van moved forward
about six to ten feet before coming to a stop beyond the intersection. Trooper Gonzales
approached the van and noticed Appellant in the driverâs seat hunched over and not
moving. He requested that Appellant show his hands. 
Â Â Â Â Â Â Â Â Â Â When Appellant rolled down his window, Gonzales detected a strong odor of alcohol
and other indications of intoxication. When questioned, Appellant responded that he had
consumed only one alcoholic beverage. Gonzales observed an open alcoholic beverage
in the cup holder of the van and asked Appellant if he could open the passenger door to
check for occupants or weapons. Proceeding with Appellantâs permission, he opened the
passenger side door and noticed a small cooler between the driverâs and passengerâs
seats and opened it to reveal more alcoholic beverages. Pursuant to Gonzalesâs request,
Appellant exited the van at which time Gonzales noticed a bottle of tequila in the driverâs
seat. According to Gonzalesâs testimony and offense report, Appellant was confused and
disoriented and claimed he had stopped to take a nap and âwee wee.â
Â Â Â Â Â Â Â Â Â Â Trooper Gonzales performed the horizontal gaze nystagmus field sobriety test and
observed all six clues indicating Appellant was intoxicated. Appellant was uncooperative
and verbally abusive and refused to participate in other field sobriety tests. He was
arrested for driving while intoxicated and transported to the Hale County Jail with the other
prisoner in the trooperâs patrol car. 
Â Â Â Â Â Â Â Â Â Â We will address Appellantâs issues in a logical rather than sequential order. Thus,
we first address his contention that the trial court abused its discretion in denying his
motion to suppress.Â 
Motion to Suppress
Â Â Â Â Â Â Â Â Â Â Appellant filed a motion to suppress alleging that Trooper Gonzales had no
reasonable suspicion to detain him and further alleged that the community caretaking
exception to the warrant requirement of the Fourth Amendment did not support the
trooperâs actions. At the suppression hearing, Gonzales was the only witness to testify for
the State. The substance of Gonzalesâs testimony was that he believed the van was
disabled and blocking an intersection. He interrupted the transfer of his prisoner to stop
and check on the situation.
Â Â Â Â Â Â Â Â Â Â The defense called Heath Bozeman, a transportation engineer with the Texas
Department of Transportation, in an effort to establish that Appellant was not blocking the
intersection. The defense argued that Appellant was parked on the shoulder of FM 789
and not blocking the intersection. The defense also asserted there was no evidence to
suggest that Gonzales was engaging in his community caretaking duties. 
Â Â Â Â Â Â Â Â Â Â Pursuant to State v. Cullen, 195 S.W.3d 696, 699-700 (Tex.Crim.App. 2006),
Appellant requested, and the trial court made, findings of fact and conclusions of law. As
relevant here, the trial court made the following findings of fact:
3. while traveling on Texas FM 789 Trooper Gonzales observed a blue
passenger van parked in the intersection of Texas FM 789 and County Road
175;
* * *
5. Trooper Gonzales observed the blue passenger van to be blocking the
intersection of Texas FM 789 and County Road 175; and
6. the blue passenger van was parked in a position in the intersection where
vehicles entering County Road 175 from FM 789 or exiting County Road 175
into FM 789 would collide with the blue passenger van. 
Â 
Â Â Â Â Â Â Â Â Â Â The trial court made one conclusion of law as follows:
Â 
[t]he defendant was lawfully stopped by Trooper Gonzales because the
defendant violated Texas Transportation Code Section 545.302. Section
545.302 states that an operator may not stop, stand, or park a vehicle in an
intersection. The blue van operated by the defendant was parked in the
intersection of Texas FM 789 and County Road 175 when observed by
Trooper Gonzales. The location of the van, where parked, would have
caused vehicles entering or exiting the two roadways through the intersection
to collide with the van.
Â 
Â Â Â Â Â Â Â Â Â Â I. Standard of Review 
Â Â Â Â Â Â Â Â Â Â A trial courtâs ruling on a motion to suppress is reviewed for abuse of discretion. 
Balentine v. State, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). In determining whether the
trial court abused its discretion we accord almost total deference to a trial courtâs
determination of the historical facts especially if those determinations turn on witnessesâ
credibility and demeanor. Neal v. State, No. AP-75406, 2008 WL 2437667, at *11
(Tex.Crim.App. June 18, 2008). We review the courtâs application of the law to the facts
de novo. See Amador v. State, 221 S.W.3d 666, 673 (Tex.Crim.App 2007); Carmouche
v. State, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); Guzman v. State, 955 S.W.2d 85, 88-89 (Tex.Crim.App. 1997). We do not engage in our own factual review; rather, the trial
court is the sole judge of the credibility of the witnesses and the weight to be given their
testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). Where, as here, the
trial court makes explicit findings of fact, we determine whether the evidence, when viewed
in the light most favorable to the trial courtâs ruling, supports those findings. See State v.
Kelly, 204 S.W.3d 808, 818-19 (Tex.Crim.App. 2006). The decision of the trial court will
be sustained if it is correct on any theory of law applicable to the facts of that case. Ross,
32 S.W.3d at 856.Â 
Â Â Â Â Â Â Â Â Â Â At a hearing on a motion to suppress, the defendant bears the initial burden of
producing evidence that rebuts the presumption of proper police conduct. Ford v. State,
159 S.W.3d 488, 492 (Tex.Crim.App. 2005). Once the defendant satisfies this burden by
establishing that a search or seizure occurred without a warrant, the burden shifts to the
State to establish that the search or seizure was conducted pursuant to a warrant or was
reasonable. Bishop v. State, 85 S.W.3d 819, 822 (Tex.Crim.App. 2002). 
Â Â Â Â Â Â Â Â Â Â A. Traffic Violation
Â Â Â Â Â Â Â Â Â Â It is a violation of the Texas Transportation Code for an operator to stop, stand, or
park a vehicle in an intersection. Tex. Transp. Code Ann. Â§ 545.302(a)(3) (Vernon Supp.
2007). A traffic violation committed in an officerâs presence authorizes an initial stop. See
Armitage v. State, 637 S.W.2d 936, 939 (Tex. 1982). The decision to stop a vehicle is
reasonable where law enforcement has probable cause to believe that a traffic violation 
has occurred. Walter v. State, 28 S.W.3d 538, 542 (Tex.Crim.App. 2000), citing Whren
v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Proof that
an offense was actually committed is not a requisite of an investigative detention as long
as the officer reasonably believed that a violation was in progress. Drago v. State, 553
S.W.2d 375, 377 (Tex.Crim.App. 1977).
Â Â Â Â Â Â Â Â Â Â B. Discussion
Â Â Â Â Â Â Â Â Â Â The crux of Appellantâs defense and one of his arguments on appeal is that the
State failed to prove the existence of an intersection where his van was stopped. Appellant
insists he was parked on the shoulder of FM 789. According to exhibits introduced into
evidence, FM 789 runs north and south and merges on the west side of an âSâ curve with
County Road 175 to form a âYâ intersection.


 
Â Â Â Â Â Â Â Â Â Â Traffic engineer Bozeman testified that, as defined by the Texas Department of
Transportation, an intersection is the general area where two or more roadways intersect
or merge. Bozeman was not familiar with the intersection nor had he seen photographs
of the location. Instead, his testimony was aided by a February 1, 1955 right-of-way map. 
He also pointed out to defense counsel, âI think youâre trying to make the intersection as
a hard-to-find area, and it is not. Itâs the general area.â
Â Â Â Â Â Â Â Â Â Â Trooper Gonzales testified numerous times that Appellantâs van was blocking the
intersection of County Road 175 and FM 789. Although the van was never physically on
FM 789, it nevertheless blocked the entrance to County Road 175. He further testified that
he was justified in detaining Appellant because he was in violation of Â§ 545.302(a)(3) of
the Transportation Code for which a citation may issue. We conclude that Trooper
Gonzalesâs conduct was reasonable. 
Â Â Â Â Â Â Â Â Â Â It is of no consequence that Appellantâs van moved forward and away from the
intersection after Gonzales activated his patrol car lights. Section 545.302(a)(3) does not
prescribe a minimum time the vehicle must be stopped in the intersection for the act to
constitute an offense. When viewed in the light most favorable to the trial courtâs ruling,
the findings of fact and conclusion of law are supported by the evidence.
Â Â Â Â Â Â Â Â Â Â Appellant also complains that the trial courtâs ruling on his motion to suppress
cannot be sustained under the community caretaking exception to the warrant requirement
of the Fourth Amendment because there is no evidence to support Trooper Gonzalesâs
actions. If the trial courtâs ruling on a motion to suppress is correct on any theory of law
applicable to the case, the decision will be sustained. Ross, 32 S.W.3d at 855-56. Having
upheld the trial courtâs ruling because Appellant committed a traffic violation in Gonzalesâs
presence thereby justifying Gonzalesâs actions, we need not address Appellantâs
community caretaking argument. We conclude the trial court did not abuse its discretion
in denying Appellantâs Motion to Suppress. Issue two is overruled.
Motion for Mistrial
Â Â Â Â Â Â Â Â Â Â By his first issue, Appellant maintains the trial court erred in denying his motion for
mistrial because a juror withheld her knowledge of Appellantâs family and her husbandâs
former relationship to Appellantâs family. We disagree. 
Â Â Â Â Â Â Â Â Â Â I. Standard of Review
Â Â Â Â Â Â Â Â Â Â We review a trial courtâs ruling on a motion for mistrial for abuse of discretion. See
Webb v. State, 232 S.W.3d 109, 112 (Tex.Crim.App. 2007). We view the evidence in the
light most favorable to the trial courtâs ruling and uphold the ruling if it was within the zone
of reasonable disagreement. Wead v. State, 129 S.W.3d 126, 129 (Tex.Crim.App. 2004). 
A trial court abuses its discretion in denying a motion for mistrial only when no reasonable
view of the record could support the ruling. Webb v. State, 232 S.W.3d 109, 112
(Tex.Crim.App. 2007). 
Â Â Â Â Â Â Â Â Â Â A. Discussion
Â Â Â Â Â Â Â Â Â Â In the case at bar, after the receipt of the juryâs verdict at the guilt/innocence stage,
but prior to commencement of the punishment phase, defense counsel informed the trial
court that Appellantâs mother and stepfather recognized Juror Farias as an ex-relative of
Appellantâs family and that there had been âtremendous acrimony over child custody stuff.â 
Appellant moved for a mistrial on that basis, whereupon the following colloquy occurred
between the trial court and Juror Farias:
Â Â Â Â Â Â Â Â Â Â Court: And Ms. Farias, do you know the Defendant in this case?

Â 
Juror: No, I donât know him.

Â 
Court: And do you know if you have ever, in the past, ever been related to
him or any members of his family that you know of?

Â 
Juror: I did know them, but when I looked, his parents lived across the street
from me and then I realized that my husband was married to, I guess, his
sister, at one time, but I donât know him.

Â 
Court: So whenever we conducted the voir dire examination you didnât know
that connection, or anything like that?

Â 
Juror: I didnât know that connection until I saw his parents and then I thought,
well, the name clicked, and I thought well I wonder if thatâs the same person,
but I donât know him.

Â 
Court: And the fact that you realized, I guess, during the trial that these
people sitting in the Courtroom were living across the street from you at one
point in time; did that affect your ability to be fair and impartial in the case
and [j]udge the evidence?

Â 
Juror: No, I donât believe it does.

Â 
Court: And it is yes or no.

Â 
Juror: No, it doesnât.

Â 
Court: It did not affect your ability in deciding the facts of this case?

Â 
Juror: No.


Â Â Â Â Â Â Â Â Â Â Thereafter the trial court ruled that, based on the evidence before it, the motion for
mistrial was denied. The trial court then inquired if the parties were ready to proceed to the
punishment phase. The State announced it was ready and defense counsel requested a
recess to discuss what had occurred. Following a short recess, the trial proceeded to the
punishment phase. Defense counsel never requested permission to question Juror Farias
regarding her relationship with Appellantâs family or any potential bias in that regard, nor
did he object to her qualifications or further service as a juror. 
Â Â Â Â Â Â Â Â Â Â The State contends that Appellant has not preserved his contention for appellate
review. We agree. In Franklin v. State, 12 S.W.3d 473, 477 (Tex.Crim.App. 2000)
(Franklin I), a juror revealed for the first time during trial that she knew the complainant. 
The trial court denied defense counselâs request to question that juror about the nature of
her relationship with the victim, how long it had lasted, whether or not she could set aside
any of her relationship with the victim in sitting in judgment, or whether she would tend to
give more or less credence to the victimâs testimony and truthfulness given their
relationship. The court of appeals determined that the trial court had erred in refusing to
permit questioning of the juror to develop the nature of the relationship, but held that
because counsel did not specifically request to make a separate bill of exception for
purposes of appeal, the error was waived. Citing Nunfio v. State, 808 S.W.2d 482, 484
(Tex.Crim.App. 1991), overruled on other grounds, 994 S.W.2d 170, 171 (Tex.Crim.App.
1999), the Court of Criminal Appeals disagreed. Noting that once the trial court was on
notice of defense counselâs proposed questions, they found that the refusal to permit the
request amounted to a direct order not to ask those questions. The Court then concluded
that the appellant had obtained a ruling and properly preserved the complaint for review. 
Franklin I, 12 S.W.3d at 477. 
Â Â Â Â Â Â Â Â Â Â In the case at bar, after the trial court ruled adversely to Appellant on his motion for
mistrial, defense counsel made no effort to question Juror Farias about the nature of her
relationship with Appellantâs family to determine potential bias and provide a basis for
appellate review. Furthermore, Appellant never sought to make a separate record as a bill
of exception for appellate purposes, nor did he object to Juror Fariasâs continued service
as a juror. Thus, we conclude under the rationale of Franklin I, Appellant failed to preserve
the denial of his motion for mistrial for appellate review.
Â Â Â Â Â Â Â Â Â Â Assuming, arguendo, that error was preserved and that the information withheld by
Juror Farias was material, we are convinced, beyond a reasonable doubt, that Appellant
was not denied his constitutional right to trial before an impartial jury. See Tex. R. App. P.
44.2(a). See also Franklin v. State, 138 S.W.3d 351, 354 (Tex.Crim.App. 2004) (Franklin
II); Sypert v. State, 196 S.W.3d 896, 902-03 (Tex.App.âTexarkana 2006, pet. refâd). 
Materiality is determined by evaluating whether the withheld information would likely reveal
the juror harbored a bias or prejudice to such a degree that the juror should have been
excused from jury service. Sypert, 196 S.W.3d at 900. Mere familiarity is not necessarily
material information. Franklin I, 12 S.W.3d at 478, citing Decker v. State, 717 S.W.2d 903,
907 (Tex.Crim.App. 1983). 
Â Â Â Â Â Â Â Â Â Â Juror Farias was unaware during voir dire of a potential relationship with Appellantâs
family. She did not know Appellant and recognized his parents only after trial had
commenced. She then realized her husband had been married to Appellantâs sister at one
time. The trial court questioned her on her ability to be fair and impartial, to which she
responded affirmatively. Additionally, where, as here, bias or prejudice was not
established as a matter of law, the trial court had discretion to determine whether bias or
prejudice actually existed to such a degree that Juror Farias was disqualified and should
have been excused from jury service. See Anderson v. State, 633 S.W.2d 851, 853-54
(Tex.Crim.App. [Panel Op.] 1982). After questioning Juror Farias concerning her
knowledge of or relationship to other members of Appellantâs family, whether or not she
could be fair and impartial, and whether her ability to decide the facts would be affected
by that knowledge or former relationship, the trial court concluded that she was qualified
to continue to serve as a juror. This, the trial court had discretion to do. Issue one is
overruled. 
Conclusion
Â Â Â Â Â Â Â Â Â Â Having overruled both of Appellantâs issues, the trial courtâs judgment is affirmed.




Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Patrick A. Pirtle

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice







Do not publish.



t-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-bidi-language:EN-US;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-10-0085.cv%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-10-0085.cv%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-10-0085.cv%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-10-0085.cv%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-10-0085.cv%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-10-00085-CV

Â 

IN THE COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL E

Â 



JULY
21, 2011

Â 



Â 

STACY CONNER, APPELLANT

Â 

v.

Â 

TIM JOHNSON, APPELLEE 



Â 



Â 

 FROM THE 72ND DISTRICT COURT OF
LUBBOCK COUNTY;

Â 

NO. 2008-544,345; HONORABLE RUBEN GONZALES REYES, JUDGE



Â 



Â 

Before CAMPBELL
and PIRTLE, J.J., and BOYD, S.J.[1]

Â 

MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â  Appellant
Stacy Conner, appearing pro se,
appeals a take nothing judgment in favor of appellee Tim Johnson.Â  We will affirm.

Â Â Â Â Â Â Â Â Â Â Â  We
begin by noting ConnerÂs brief does not meet several requisites of an appellate
brief.Â  Tex. R. App. P. 38.1.Â  We conclude, however, he presents sufficient
argument to allow us to decide the appeal.Â 
Tex R. App. P. 38.9.Â  Johnson,
appearing pro se on appeal, filed a
response to ConnerÂs brief. 

Analysis

Â Â Â Â Â Â Â Â Â Â Â  By
his first issue, Conner complains of the absence from the clerkÂs record on
appeal of certain documents.Â 
Specifically, he argues the omission of a Ânotice of intent to
dismiss--no service of process,Â his motion for continuance, a letter from the
court concerning his motion for continuance, and an order granting a
continuance constitutes reversible error.Â 


None of the documents Conner mentions
are automatically included in the clerkÂs record.Â  See
Tex. R. App. P. 34.5(a).Â  But a party may
designate any other documents filed of record for inclusion in the clerkÂs
record.Â  See Tex. R. App. P. 34.5(a)(13),(b).Â  However, the clerkÂs record contains no such
designation by Conner.Â  Additionally,
Conner was permitted to withdraw the clerkÂs record for preparation of his
brief.Â  The appellate rules provide a
means for supplementation of the record.Â 
On his discovery that the clerkÂs record did not contain the documents
he deemed necessary for this appeal, Conner could have directed the trial court
clerk, by letter, to prepare and file a supplemental clerkÂs record containing
the documents.Â  Tex. R. App. P.
34.5(c).Â  But he did not.Â  

We recognize Conner is proceeding pro se.Â 
We do not, however, have different procedural rules for litigants representing
themselves on appeal.Â  The same
procedural requirements exist for pro se
and attorney-represented appellants.Â  See Greenstreet
v. Heiskell, 940 S.W.2d 831, 834-35 (Tex.App.--Amarillo 1997, no writ)
(stating pro se litigants are held to
the same standards as licensed attorneys and must comply with applicable laws
and rules of procedure).

Since the clerk was not required to
include in the clerkÂs record the documents Conner complains were omitted, it
was ConnerÂs burden both to designate them for inclusion in the record, and to
cause the record to be supplemented if necessary, when he was provided the
record for his use.Â  Tex. R. App. P.
34.5(b), (c); Uranga v. Tex. Workforce
CommÂn, 319 S.W.3d 787, 791 (Tex.App.--El Paso 2010, no pet.) (noting an
appellantÂs burden of bringing forward appellate record enabling court to
address appellate complaints).Â  No error
by the trial court is shown.Â  

Moreover, nothing in the record
demonstrates how the absence of the documents either probably caused the
rendition of an improper judgment or probably prevented Conner from properly
presenting his case on appeal.Â  Tex. R.
App. P. 44.1(a).Â  

ConnerÂs first issue is overruled.

By his second issue, Conner asserts
he was denied due process of law and Âequal access to courtÂ[2]
because he did not receive sufficient notice of the January 5, 2010, trial
setting.Â  From ConnerÂs brief analysis of
the issue, the essence of his complaint appears to be that he did not receive
written notice of the trial setting.Â 
While Conner made known to the trial court his objection to proceeding
with the trial, and obtained an adverse ruling, he did not object on the
constitutional grounds he now urges on appeal.Â 


An issue raised on appeal should
direct the appellate court to error committed by the trial court.Â  Tex. R. App. P. 33.1.Â  ÂA party waives the right to raise a
constitutional claim such as due process on appeal if that claim is not
presented to the trial court.ÂÂ  Kaufman v. CommÂn for Lawyer Discipline,
197 S.W.3d 867, 875 (Tex.App.--Corpus Christi 2006, pet. denied).Â  Because Conner did not present his
constitutional complaints to the trial court, the issue is not preserved for
our review.

Moreover, even had Conner preserved
his complaint for our review it lacks merit.Â 
The clerkÂs record contains a letter from Conner to a senior district
judge who apparently conducted a hearing in the case.Â  The document is dated October 27, 2009, and
bears the November 4, 2009, file mark of the district clerk.Â  In the correspondence, Conner acknowledged
the case was set for trial on January 5, 2010.Â 
Thus, Conner received more than forty-five daysÂ notice of the trial
setting.Â  See Tex. R. Civ. P. 245 (parties entitled to reasonable notice of
not less than forty-five days of first trial setting).Â  ConnerÂs second issue is overruled. 

In his third issue, citing Rule of
Civil Procedure 305, Conner asserts he did not receive a copy of a proposed
judgment submitted by counsel for Johnson to the trial court.Â  Conner does not direct us to a location in
the record where he called this complaint to the attention of the trial court.Â  Nothing is therefore preserved for our
review.Â  Tex. R. App. P. 33.1(a).Â  

Even had the complaint been properly
preserved, however, the record does not demonstrate Conner suffered any
harm.Â  Tex. R. App. P. 44.1(a)(1) (unless
error probably caused rendition of improper judgment, judgment will not be
reversed on appeal).Â  ConnerÂs third
issue is overruled.

Â Â Â Â Â Â Â Â Â Â Â  In
his fourth issue, Conner argues the trial court erred by including in the
judgment the recital Â[a]ll parties appeared and announced to the Court that
they were ready for trial.ÂÂ  By order of
the trial court, Conner appeared for trial by telephone.[3]Â  He does not contest this fact on appeal.Â  Rather the nub of ConnerÂs complaint seems to
be he did not announce ready for trial.Â 
We agree.Â  The reporterÂs record
shows at the commencement of trial Conner vehemently argued he was not prepared
for trial, apparently based on the claim he did not receive written notice of
the setting.Â  

We will assume, without deciding,
that Conner preserved his objection to the complained-of recital in the
judgment through his motion for new trial.[4]Â  However, Â[t]he factual recitations or
reasons preceding the decretal portion of a judgment form no part of the
judgment itself.ÂÂ  Alcantar v. Okla. NatÂl Bank, 47 S.W.3d 815, 823 (Tex.App.--Fort
Worth 2001, no pet.).Â  Therefore, even
though Conner did not announce ready for trial, the contrary recital in the
judgment causes him no harm.Â  Tex. R.
App. P. 44.1(a).Â  See Campbell v. Campbell,
No. 07-02-0436-CV, 2003 Tex. App. Lexis 9694, at *4-*6 (Tex.App.--Amarillo Nov.
13, 2003, no pet.) (mem. op.) (incorrect recitals in judgment included
appellantÂs announcement of ready for trial but record did not demonstrate
resulting harm).Â  ConnerÂs fourth issue
is overruled.Â  

Â Â Â Â Â Â Â Â Â Â Â  By
his fifth issue, Conner asserts the trial court erred by failing to file
findings of fact and conclusions of law.Â 
The judgment was signed on February 8, 2010, and Conner placed his
request for findings of fact and conclusions of law in the prison mail system
on February 28.Â  According to Conner the
trial court did not make the requested findings, and the clerkÂs record does
not contain findings.Â  See Tex. R. App. P. 34.5(4),(6) (clerkÂs
record must include copies of request for findings and findings).Â  The clerkÂs record does not contain a notice
of past due findings and Conner asks us to consider a copy of a notice attached
as an exhibit to his appellate brief.Â  

Â Â Â Â Â Â Â Â Â Â Â  A
request for findings of fact and conclusions of law must be filed with the
clerk of the trial court within twenty days of the date the judgment was
signed.Â  Tex. R. Civ. P. 296.Â  If the trial court fails to respond to a
timely request for findings within twenty days, the requesting party must file
a notice of past due findings within thirty days of the original request.Â  Tex. R. Civ. P. 297; Bluebonnet Fin. Assets v. Miller, 324 S.W.3d 600, 602 (Tex.App.--El
Paso 2009, no pet.).Â  A party who fails
to file a notice of past due findings or files an untimely notice of past due
findings waives a complaint on appeal regarding a trial courtÂs failure to file
findings of fact and conclusions of law.Â 
See Alpert v. Crain, Caton &
James, P.C., 178 S.W.3d 398, 410 (Tex.App.--Houston [1st Dist.] 2005, pet.
denied) (complete failure to file notice of past due findings); Fleming v. Taylor, 814 S.W.2d 89, 91
(Tex.App.--Corpus Christi 1991, no writ) (untimely filed notice of past due
findings).Â  

Â Â Â Â Â Â Â Â Â Â Â  The
record does not show Conner filed a notice of past due findings with the trial
court and we may not consider documents outside the appellate record.Â  See
Samara v. Samara, 52 S.W.3d 455, 456 n.1 (Tex.App.--Houston [1st Dist.]
2001, pet. denied) (op. on rehÂg) (appellate court may not consider documents
attached to appellate brief unless documents are included in appellate record).[5]Â  Based on the appellate record and the rules
that govern our review of complaints of trial court error, we find Conner has
waived any complaint that the trial court failed to make findings of fact and
conclusions of law.Â  We overrule ConnerÂs
fifth issue. 

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  Having
overruled each of ConnerÂs issues on appeal, we affirm the judgment of the
trial court.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  James
T. Campbell

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 











[1]Â 
John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.Â  





[2] Conner does not provide authorities
supporting his due process and Âequal access to courtsÂ contentions. See Tex. R. App. P. 38.1(i) (appellantÂs
brief must contain clear and concise argument of contentions made with
appropriate citations to authorities and record).Â  For this discussion, we assume by equal
access to courts he refers to the Open Courts provision of the Texas
Constitution.Â  Tex. Const. art. I, Â§ 13.





[3] Conner is incarcerated in a unit of
the Texas Department of Criminal Justice.





[4] By his fourth ground for granting a
new trial Conner there argued, ÂThe trial court erred even in signing a
Âjudgment for DefendantÂ when [sic] on its face value alone runs contrary to
the truth and the facts contained in the record itself.ÂÂ  The motion was apparently overruled by
operation of law.Â  Tex. R. Civ. P.
329b(c).





[5] In August 2010, Conner filed a
Âmotion for continuanceÂ with this court. Attached to the motion was a document
entitled Âpro se notice of past due findings of fact and conclusions of
law.ÂÂ  Because this document is not
included in the trial court record, we gave it no consideration.Â  See
Yarbrough v. State, 57 S.W.3d 611, 616 (Tex.App.--Texarkana 2001, pet. refÂd)
(affidavits attached to motion appellant filed with court of appeals not part
of appellate record and could not be considered on appeal).